Seth M. Lehrman (CA 178303)
seth@epllc.com
EDWARDS POTTINGER LLC
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: 954-524-2820

Scott Edelsberg (CA 330990)
scott@edelsberglaw.com
EDELSBERG LAW, P.A.
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: 305-975-3320

*Attorneys for Plaintiff Vanessa Camacho*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| VANESSA CAMACHO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HYDROPONICS, INC., and CANOP HOLDINGS, INC.,<br><br>Defendants. | Case No. 5:20-cv-00980-JGB-KK<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Vanessa Camacho (hereinafter "Plaintiff"), brings this class action lawsuit under Rule 23 of the Federal Rules of Civil Procedure against Defendants Hydroponics, Inc. and Canop Holdings, Inc. (collectively, "Defendants") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the regulations promulgated thereunder. In support of this First Amended Class Action Complaint, Plaintiff alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions

of Defendants in negligently or willfully contacting Plaintiff on her cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

2. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [FCC]."[1] The TCPA is designed to protect consumer privacy by, among other things, prohibiting the making of autodialed or prerecorded-voice calls to cell phone numbers and failing to institute appropriate do-not-call procedures. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(d).

3. The TCPA was designed to prevent unsolicited text messages, like the ones described within this Amended Complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012).

4. Additionally, the FCC has explicitly stated that the TCPA's prohibition on automatic telephone dialing systems "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." U.S.C.A. Const. Amend. 5; Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C. § 227(b)(1)(A)(iii). *Kramer v. Autobytel, Inc.,* 759 F. Supp. 2d 1165 (N.D. Cal. 2010).

5. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not

---

[1] *See In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, ¶ 1 (2015).

universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

6. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

## JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

8. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District, including Defendants' transmission of the unlawful and unsolicited text messages to Plaintiff's mobile phone.

9. The Court has personal jurisdiction over both Defendants because they transact regular and substantial business in this state, market their services within this state and have availed themselves of the jurisdiction of this state by sending telemarketing text messages, or assisting in sending telemarketing text messages, to Plaintiff and the Class Members in and from this state.

## PARTIES

10. Plaintiff, a natural person, is a resident of California, domiciled in Riverside, California.

11. Defendant Hydroponics, Inc. is a California for-profit corporation and a citizen of the state of California, with its principal address located at 17 Corporate Plaza, Newport Beach, CA 92660. Hydroponics is also registered to transact business in the state of California.

12. Defendant Hydroponics, Inc. promotes and markets its services by sending unsolicited telemarketing text messages to wireless telephone users in violation of the TCPA.

13. Defendant Hydroponics, Inc., either directly or through Defendant Canop Holding, Inc., contributed to, authorized, assisted with, and/or otherwise caused the transmission of the unsolicited telemarketing text messages which are the subject matter of this Amended Complaint.

14. Defendant Canop Holdings, Inc. is a California for-profit corporation and citizen of the state of California, with its principal address located at 3811 Wacker Drive, Mira Loma, CA 91752. Canop Holdings, Inc. is registered to transact business in the state of California.

15. Defendant Canop Holdings, Inc. provides marketing services to Defendant Hydroponics, Inc., and as part of those services, Defendant Canop Holdings, Inc. sent countess unsolicited text messages promoting Hydroponics, Inc.'s business to wireless telephone users in violation of the TCPA.

16. Defendant Canop Holdings, Inc., acting on behalf of or at the direction of Defendant Hydroponics, Inc., sent the subject text messages to Plaintiff's mobile telephone number and the mobile telephone numbers belonging to putative class members.

17. Defendant Canop Holdings, Inc., assisted with or otherwise caused the transmission of the unsolicited telemarketing text messages which are the subject matter of this Amended Complaint.

**FACTUAL ALLEGATIONS**

18. At all times relevant, Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

19. Defendant Hydroponics, Inc. is a citizen of the State of California and, at all times mentioned herein was, a corporation and "persons," as defined by 47 U.S.C. § 153(39).

20. At all times relevant, Defendant Hydroponics, Inc. conducted business in the State of California in Orange County, within this judicial district.

21. Defendant Canop Holdings, Inc. is a citizen of the State of California and, at all times mentioned herein was, a corporation and "persons," as defined by 47 U.S.C. § 153(39).

22. At all times relevant, Defendant Canop Holdings, Inc. conducted business in the State of California in Riverside County, within this judicial district.

23. Defendant Hydroponics, Inc. promotes and markets its services by sending unsolicited telemarketing text messages to wireless telephone users, in violation of the TCPA.

24. Defendant Canop Holdings, Inc. provides marketing services to Defendant Hydroponics, Inc., and as part of those services, Defendant Canop Holdings, Inc. sent countless unsolicited text messages promoting Defendant Hydroponics, Inc.'s business to wireless telephone users, in violation of the TCPA.

25. Defendant Canop Holdings, Inc., while acting on behalf of or at the direction of Defendant Hydroponics, Inc., sent unsolicited telemarketing text messages to Plaintiff's mobile telephone number.

26. Beginning on or about September 18, 2019, Defendant Canop Holdings, Inc., at the direction of Defendant Hydroponics, Inc., transmitted telemarketing text messages to Plaintiff's cellular telephone number ending in 3760 (the "3760 Number"), as detailed below:



27. The text messages were transmitted to Plaintiff's 3760 Number within the time period relevant to this action.

-6-

FIRST AMENDED CLASS ACTION COMPLAINT

28. The text messages constitute telemarketing because the ultimate purpose of the messages was to advertise and/or promote Defendant Hydroponics, Inc.'s business, products, goods, and/or services.

29. At no time did Plaintiff provide her 3760 Number to Defendants through any medium, nor did Plaintiff provide Defendants with her prior express written consent, or any other form of consent, to receive such unsolicited text messages.

30. Plaintiff has never signed-up for, and has never used, Defendants' services, and has never had any form of business relationship with Defendants.

31. Plaintiff is the subscriber and sole user of the 3760 Number and is financially responsible for phone service to the 3760 Number, including the cellular costs and data usage incurred as a result of the unlawful text messages made to Plaintiff by Defendants.

32. Defendants' text messages were sent to Plaintiff's cellular telephone number using an "automatic telephone dialing system" (ATDS), as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A).

33. Upon information and belief, this ATDS has the capacity to store or produce telephone numbers to be called/texted, using a random or sequential number generator.

34. Upon information and belief, this ATDS has the capacity to store numbers and to dial numbers without human intervention.

35. Upon information and belief, Defendants used a combination of hardware and software systems which have the capacity to generate or store random or sequential numbers or to dial sequentially or randomly in an automated fashion without human intervention.

36. The impersonal and generic nature of the text messages that Defendants sent to Plaintiff further demonstrate that Defendants used an ATDS to send the subject messages.

37. The content of the text messages to Plaintiff and the Class Members show that they were sent for the purpose of marketing, advertising, and promoting Defendant Hydroponics, Inc.'s business and services to Plaintiff as part of an overall telemarketing strategy.

38. These messages were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

39. Plaintiff did not provide Defendants, or any of their agents, with prior express written consent or any other form of consent or permission to receive messages to her cellular telephone; therefore, these unsolicited messages violated 47 U.S.C. § 227(b)(1)

40. Defendants were aware that they were transmitting unsolicited telemarketing text messages to Plaintiff and other consumers without their prior express written consent.

41. Plaintiff was damaged by Defendants' text messages. In addition to using Plaintiff's residential cellular data, phone storage, and battery life, her privacy was wrongfully invaded, her seclusion was intruded upon, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted messages, forcing her to divert attention away from her work and other activities. Not only did the receipt of the text messages distract Plaintiff away from her personal activities, but Plaintiff was forced to spend time investigating the source of the text messages and who sent them to her. *See Muransky v. Godiva Chocolatier, Inc.,* 905 F.3d 1200, 1211 (11th Cir. 2018). ("[T]ime wasting is an injury in fact" … "[A] small injury… is enough for standing purposes").

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this class action under Rule 23(a), (b)(2), and(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and a "Class" of similarly situated individuals ("Class Members"), defined as:

> <u>No Consent Class:</u> All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message by Defendants, or anyone acting on Defendants' behalf, to said person's cellular telephone number, advertising Defendant Hydroponics, Inc.'s services, without the recipient's prior express written consent, using the same equipment that was used to text Plaintiff's cellular telephone.

43. Excluded from the Class are Defendants, and any of their subsidiary or affiliated companies, Defendants' directors, officers, and employees, and any members of the federal judiciary.

44. This action has been brought and may properly be maintained as a class action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

45. **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendants' conduct consisted of standardized spam text messages sent to cellular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

FIRST AMENDED CLASS ACTION COMPLAINT

46. Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendants' records, including, but not limited to Defendants' call logs and marketing records.

47. Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

48. **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

   a. Whether, within the four years prior to the filing of this Complaint, Defendants or their agents sent text messages (other than a message made for emergency purposes or made with the prior express consent of the called party) using an ATDS to any Class member's telephone number assigned to a cellular phone service;
   b. How Defendants obtained the numbers of Plaintiff and Class members;
   c. Whether the dialing system used by Defendants is an ATDS;
   d. Whether Defendants engaged in telemarketing when sending the text messages which are the subject of this lawsuit;
   e. Whether the text messages sent to Plaintiff and the Class Members violate the TCPA and its regulations;
   f. Whether Defendants willfully or knowingly violated the TCPA or the rules prescribed under it;
   g. Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendants' unlawful conduct;
   h. Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendants from continuing to engage in the unlawful conduct described herein; and

      i.  Whether Plaintiff and the Class are entitled to any other relief.

49. There are multiple questions of law and/or fact regarding Defendants' liability that are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

50. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

51. Plaintiff and members of the Class each received at least one text message advertising Defendant Hydroponics, Inc.'s products or services, which was sent to the mobile telephone number of Plaintiff and the members of the Class.

52. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel competent and experienced in federal litigation, including TCPA litigation and class action litigation.

53. **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendants by any member of the Class. The likelihood of the individual members

of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

54. **Class-Wide Injunctive Relief and Rule 23(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole. Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendants' ongoing violations of the TCPA, and to order Defendants to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted telemarketing text messages.

### COUNT I
### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227(b)

55. Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 41, above, as though fully stated herein.

56. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system. . .to any telephone number assigned to a . . . cellular telephone service . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

57. Automatic telephone dialing system refers to "equipment which has the capacity---(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

58. Defendants used equipment having the capacity to randomly or sequentially generate telephone numbers and to dial such numbers without human intervention and/or to automatically dial telephone numbers from a list of stored numbers, to send non-emergency telemarketing text messages to the cellular telephones of Plaintiff and the other members of the Class defined above.

59. These text messages were sent without regard to whether or not Defendants had first obtained express permission from the recipient. In fact, Defendants did not have prior express written consent to text the cellular phones of Plaintiff and the other members of the putative Class when the texts were sent.

60. Defendants have therefore violated Section 227(b)(1)(A)(iii) of the TCPA by using an ATDS to send non-emergency telemarketing text messages to the cellular phones of Plaintiff and the other members of the putative Class without their prior express written consent.

61. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227.

62. As a result of Defendants' negligent violations of 47 U.S.C. § 227, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

63. At all relevant times, Defendants knew or should have known that their conduct as alleged herein violated the TCPA.

64. Defendants knew that they did not have prior express written consent or any other form of consent to send the above-referenced text messages and knew or should have known that their conduct violated the TCPA.

65. Because Defendants knew or should have known that Plaintiff and the Class Members did not give prior express written consent, or any other form of consent, to receive autodialed text messages, the Court should treble the amount of statutory damages available to Plaintiff and members of the putative Class pursuant to Section 227(b)(3)(C).

66. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

67. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and the Class Members relief against Defendants, as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Vanessa Camacho requests that the Court enter judgment in her favor, and in favor of the class, against Defendants Hydroponics, Inc. and Canop Holdings, Inc., and prays for the following relief:

a. An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's counsel as Class counsel;

b. Statutory damages of $500 per text message sent in violation of the TCPA;

c. Willful damages of $1,500 per text message sent in violation of the TCPA;

    d. A declaration that Defendants' practices, as described herein, violate the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii);

    e. An injunction prohibiting Defendants from using an ATDS to send text messages to cellular telephones without the prior express written consent of the recipient;

    f. Reasonable attorney's fees and costs; and

    g. Such further and other relief as this Court deems reasonable and just.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

DATED: December 21, 2020

Respectfully submitted by:

*/s/ Scott Edelsberg*
Scott Edelsberg, Esq. (CA 330990)
scott@edelsberglaw.com
**EDELSBERG LAW, P.A.**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: 305-975-3320

Seth M. Lehrman (CA 178303)
seth@epllc.com
**EDWARDS POTTINGER LLC**
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: 954-524-2820

*Attorneys for Plaintiff Vanessa Camacho*

-15-

FIRST AMENDED CLASS ACTION COMPLAINT